# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3382

_____

United States of America,      *
     *
        Plaintiff - Appellee,      *
     *    Appeal from the United States
     v.      *    District Court for the District
     *    of Nebraska.
Gilbert M. Gibreal, Jr.,      *
     *      [UNPUBLISHED]
        Defendant - Appellant.      *

_____

Submitted: June 14, 2006
Filed: June 19, 2006

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Gilbert M. Gibreal, Jr., pled guilty to conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 371. The district court[1] sentenced him to 10 months imprisonment and restitution. Gibreal appeals, alleging that the district court erred in its finding of the amount of loss and erred in its interpretation and application of the guidelines. We affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

In his plea agreement Gibreal admitted that he agreed with codefendant Tamara Sheffield to assist in the cashing of forged checks. Gibreal conceded that the government had evidence that the scheme agreed upon was to make out stolen bank checks to a named payee and present the checks to banks as a split deposit (a deposit of the check with a cash withdrawal of part of the face amount). Gibreal admitted that he drove Sheffield to banks to pass forged checks and passed several forged checks himself.

A revised presentence report (PSR) was prepared after Gibreal's plea. The PSR indicated that Gibreal and his co-conspirators' conduct caused an actual loss of $32,402.88 and that Gibreal was responsible for $14,914.12 of the loss, based on transactions involving six victims. Gibreal objected to the PSR. At the initial sentencing hearing he challenged the attribution to him of the losses of victims Wynne, Hemstreet, and Quade. The government then introduced testimony from a postal inspector, and the district court gave time for additional briefing on whether a bank fraud conspirator is responsible for reasonably foreseeable acts or only those in which he was personally involved.

At the subsequent sentencing hearing, the district court overruled Gibreal's objection regarding the amount of loss, finding that the government had "met its burden of showing that the loss that is described in the presentence report was reasonably foreseeable and it was a result of transactions that were jointly undertaken and in furtherance of the conspiracy". The district court set a base offense level of 6, added 4 levels because the loss was between $10,000 and $30,000, and deducted 2 levels for acceptance of responsibility. It found a total amount of loss of $14,375 and ordered restitution of that amount.[2]

_____

[2]The difference between the loss calculation in the PSR ($14,914.12) and the loss amount used by the district court ($14,375) makes no difference for sentencing purposes because the enhancement level would be the same using either figure.

Gibreal argues that there was insufficient evidence that some of the losses of victims Wynne, Hemstreet, and Quade were attributable to him. He contends that the district court consequently erred by finding that the government had satisfied its burden and incorrectly interpreted and applied the sentencing guidelines. Gibreal emphasizes that the postal inspector did not testify that he personally participated in several of the transactions.

Under U.S.S.G. § 1B1.3(a)(1)(B), a defendant involved in a jointly undertaken criminal activity is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction". Relevant factors in determining foreseeability include "whether the defendant benefited from his co-conspirator's activities and whether he demonstrated a substantial level of commitment to the conspiracy." United States v. Bad Wound, 203 F.3d 1072, 1076 (8th Cir. 2000) (internal quotation omitted). As the government points out, Gibreal benefited from Sheffield's procurement of stolen checks since he assisted her in cashing fraudulent checks in exchange for methamphetamine and sometimes received part of the check proceeds. The losses were foreseeable to Gibreal since he accompanied Sheffield during several of her actions, and Gibreal demonstrated his commitment to the conspiracy by providing transportation on several occasions.

We conclude that the government met its burden of demonstrating the amount of loss, and the district court's determination of the amount was not clearly erroneous. Finally, the district court interpreted and applied the guidelines correctly.

Accordingly, we affirm the judgment of the district court.

_____